1  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
2    Crystal Nix-Hines (Bar No. 326971)
     crystalnixhines@quinnemanuel.com
3    Kevin Y. Teruya (Bar No. 235916)
     kevinteruya@quinnemanuel.com
4    Claire Hausman (Bar No. 282091)
     clairehausman@quinnemanuel.com
5    Brantley I. Pepperman (Bar No. 322057)
     brantleypepperman@quinnemanuel.com
6  865 South Figueroa Street, 10th Floor
7  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
8  Facsimile:   (213) 443-3100

9  Attorneys for Defendant General Motors LLC

10

11            **UNITED STATES DISTRICT COURT**

12     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

| | |
|---|---|
| 14  CALABASAS LUXURY MOTORCARS, INC., on behalf of itself and all others similarly situated, | Case No. 2:22-cv-06622-TJH (PDx) |
| 15 | **DEFENDANT GENERAL MOTORS** |
| 16       Plaintiff, | **LLC'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| 17       vs. | **AND TO STRIKE CLASS ALLEGATIONS;   MEMORANDUM** |
| 18  GENERAL MOTORS, LLC, AMERICREDIT FINANCIAL | **OF POINTS AND AUTHORITIES IN SUPPORT   THEREOF;   REQUEST** |
| 19  SERVICES, INC., and DOES 1 through 10, inclusive, | **FOR JUDICIAL NOTICE** |
| 20 | Date:      February 13, 2023 |
| 21       Defendants. | Time:      UNDER SUBMISSION Crtrm.:    9B |
| 22 | |
| 23 | The Hon. Terry J. Hatter Jr. |
| 24 | Trial Date:          None Set |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE

PLEASE TAKE NOTICE that on February 13, 2023, or on such other date as may be agreed upon or ordered, in Courtroom 9B of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California, Defendant General Motors LLC will and hereby does move this Court to dismiss Plaintiff's class action complaint (Dkt. 1) and to strike the class allegations contained therein.[1]   Pursuant to the Court's Standing Order, unless the Court otherwise notifies the Parties, the Court will take this Motion under submission, there will be no hearing on the matter, and no appearances are required.   This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), and is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and accompanying exhibits filed concurrently with this Motion, all pleadings and papers filed herein, oral argument of counsel, and any other matter that the Court may consider on this Motion.

---

[1]   This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 2, 2022.

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   RELEVANT ALLEGATIONS AND BACKGROUND ................................. 4

    A.    The Parties.................................................................................. 4

    B.    Procedural History ..................................................................... 4

    C.    Plaintiff's Present Complaint and Allegations............................ 6

III.  LEGAL STANDARDS ....................................................................... 7

IV.   ARGUMENT ................................................................................... 8

    A.    Plaintiff Fails to Identify GM LLC's Role in the Challenged Conduct ...................................................................................... 8

    B.    Plaintiff's Conclusory Allegations Fail to Establish UCL Standing ................................................................................... 11

    C.    Plaintiff Still Fails to Establish that Legal Remedies are Inadequate ............................................................................... 13

    D.    Plaintiff Fails to Allege "Unfair" Conduct ............................. 15

        1.    Plaintiff Fails the "Competitor" Test.......................... 16

        2.    Plaintiff Fails the "Balancing" Test............................ 17

        3.    Plaintiff Fails the "Tethering" Test ............................ 21

        4.    Plaintiff Fails the "FTC" Test..................................... 22

    E.    The Court Should Dismiss with Prejudice................................ 24

    F.    The Court Should Strike Plaintiff's "Fail-Safe" Class Allegations...... 25

V.    CONCLUSION ............................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Ahmadi v. Nationstar Mortgage, LLC*,
  2016 WL 7495826 (C.D. Cal. Mar. 31, 2016) ....................................................10

5

*Ajzenman v. Office of Comm'r of Baseball*,
  492 F. Supp. 3d 1067 (C.D. Cal. 2020)................................................................21

6

7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................8, 9, 23

8

9

*Banks v. R.C. Bigelow, Inc.*,
  536 F. Supp. 3d 640 (C.D. Cal. 2021) ................................................................15

10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................9

11

12

*Bird v. Real Time Resolutions, Inc.*,
  2017 WL 661375 (N.D. Cal. Feb. 17, 2017)................................................24, 25

13

14

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ...........................................................................24

15

*Calabasas Luxury Motorcars, Inc. v. BMW North America, LLC et al*,
  Case No. 2:21-cv-08825-DMG (C.D. Cal.) ..............11, 12, 16, 17, 18, 21, 22, 24

16

17

*Calabasas Luxury Motorcars, Inc. v. General Motors LLC, et al.*,
  Case No. 2:21-cv-09566-TJH (C.D. Cal.)...................4, 5, 9, 13, 15, 16, 19, 22, 24

18

19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ..................................................................................18, 21

20

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ..............................................................................17

21

22

*City of San Jose v. Office of the Comm'r of Baseball*,
  776 F.3d 686 (9th Cir. 2015) .............................................................................16

23

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021)...............................................................14

24

25

*Coffee v. Google, LLC*,
  2022 WL 94986 (N.D. Cal. Jan. 10, 2022)..........................................................20

26

27

*ConsumerDirect, Inc. v. Pentius, LLC*,
  2022 WL 1585702 (C.D. Cal. Apr. 4, 2022) .........................................................9

28

*Cont'l T. V., Inc. v. GTE Sylvania Inc.*,
  433 U.S. 36 (1977)...........................................................................20, 24

*Creative Mobile Techs., LLC v. Flywheel Software, Inc.*,
  2016 WL 7102721 (N.D. Cal. Dec. 6, 2016) ....................................12

*Davis v. HSBC Bank Nevada*,
  691 F.3d 1152 (9th Cir. 2012) ................................................19

*Distance Learning Co. v. Maynard*,
  2020 WL 2995529 (N.D. Cal. June 4, 2020)......................................18

*Drake v. Toyota Motor Corp.*,
  2021 WL 2024860 (C.D. Cal. May 17, 2021)................................13, 14

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) .............................15, 16, 17, 21, 22

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*,
  2017 WL 11467730 (C.D. Cal. Sept. 25, 2017) ..................................11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ..................................................8

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012)..........................................18

*Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*,
  2021 WL 5507225 (C.D. Cal. Nov. 24, 2021) ....................................14

*Ford v. Lehman Bros. Bank, FSB*,
  2012 WL 2343898 (N.D. Cal. June 20, 2012)....................................11

*Gingery v. City of Glendale*,
  831 F.3d 1222 (9th Cir. 2016) ..................................................8

*Goldsmith v. CVS Pharmacy, Inc.*,
  2020 WL 3966004 (C.D. Cal. May 5, 2020)......................................21

*Greene v. Select Funding, LLC*,
  2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ....................................25

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017).........................................18

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ..................................................21

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
  2012 WL 9506072 (C.D. Cal. July 31, 2012) .....................................9

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
    2013 WL 5614294 (C.D. Cal. Sept. 30, 2013 ...................................................10

*In re German Auto. Mfrs. Antitrust Litig.*,
    497 F. Supp. 3d 745 (N.D. Cal. 2020)......................................................................8

*In re Qualcomm Litig.*,
    2017 WL 5985598 (S.D. Cal. Nov. 8, 2017).........................................................20

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
    2022 WL 522484 (C.D. Cal. Feb. 9, 2022) ..........................................................13

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ...................................................................................8

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .........................................................................15, 16

*Lisner v. Sparc Group LLC*,
    2021 WL 6284158 (C.D. Cal. Dec. 29, 2021).......................................................14

*Lith v. Iheartmedia + Ent., Inc.*,
    2016 WL 4000356 (E.D. Cal. July 25, 2016)........................................................25

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...........................................................................18, 22

*Mcgee v. Diamond Foods, Inc.*,
    2016 WL 816003 (S.D. Cal. Mar. 1, 2016)...........................................................23

*Milman v. FCA U.S., LLC*,
    2019 WL 3334612 (C.D. Cal. Apr. 15, 2019)........................................................21

*Molina v. BAC Home Loan Servicing, LP*,
    2012 WL 13015012 (C.D. Cal. Feb. 24, 2012) ...............................................10, 11

*NorthBay Healthcare Group, Inc. v. Kaiser Found. Health Plan, Inc.*,
    2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ..........................................................9

*People's Choice Wireless, Inc. v. Verizon Wireless*,
    131 Cal. App. 4th 656 (2005) .........................................................................16, 20

*Polsky v. Ramnani*,
    2018 WL 6133406 (C.D. Cal. Mar. 26, 2018) .....................................................8, 9

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022)..................................................................14

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) .........................................................................15, 19

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009)....................................................................25

*Schertzer v. Bank of Am., N.A.*,
    445 F. Supp. 3d 1058 (S.D. Cal. 2020) ...............................................................18

*Shelton v. Ocwen Loan Servicing, LLC*,
    2019 WL 4747669 (S.D. Cal. Sept. 30, 2019) ....................................................12

*Shvarts v. Budget Group, Inc.*,
    81 Cal. App. 4th 1153 (2000) ...............................................................................19

*Simpson v. California Pizza Kitchen, Inc.*,
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ...............................................................24

*Singh v. Google Inc.*,
    2017 WL 2404986 (N.D. Cal. June 2, 2017).......................................................19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...............................................................13, 14, 15

*Sybersound Recs., Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .............................................................................15

*Tellone Prof'l Ctr. LLC v. Allstate Ins. Co.*,
    2021 WL 1254360 (C.D. Cal. Jan. 26, 2021)......................................................23

*Teresa Adams v. Cole Haan, LLC*,
    2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) .....................................................14

*Thomas v. Amerada Hess Corp.*,
    393 F. Supp. 58 (M.D. Pa. 1975).........................................................................20

*Vargas v. JP Morgan Chase Bank, N.A.*,
    201 WL 3435628 (C.D. Cal. July 11, 2014) ......................................................10

*Williamson v. McAfee, Inc.*,
    2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ...................................................18

*Woodard v. Barnum*,
    2009 WL 10673491 (D. Ariz. Aug. 24, 2009) ......................................................9

*Wu v. iTalk Glob. Commc'ns, Inc.*,
    2021 WL 5176799 (C.D. Cal. Feb. 2, 2021) ......................................................14

## **Statutory Authorities**

Cal. Bus. & Prof. Code § 17204 ........................................................................10, 11

Cal. Veh. Code § 11709.4...............................................................................5, 21, 22

Cal. Civ. Code § 2987.....................................................................................5, 21, 22

1

### **Rules and Regulations**

2   Fed R. Civ. P. 8 ........................................................................................... 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     PRELIMINARY STATEMENT

This Court previously dismissed Plaintiff Calabasas Luxury Motorcars, Inc.'s ("Plaintiff's") unfounded claims that General Motors LLC ("GM LLC") and AmeriCredit Financial Services, Inc. ("GMF") violated California's Cartwright Act and Unfair Competition Law ("UCL") through a purported "conspiracy" to "restrict" the supply of leased GM vehicles.  The Court held that "Calabasas failed to allege sufficient facts that would allow a conclusion that GM LLC and AmeriCredit were capable of conspiring with each other under the Cartwright Act," and "it failed to sufficiently state its UCL claim."  Now Plaintiff, largely abandoning its prior theories, has returned with a new lawsuit that, once again, fails to assert any cognizable claims. The Court should again dismiss—this time with prejudice.  Another court in this jurisdiction recently dismissed similar claims against a different automotive company, BMW, on grounds applicable here.  *See infra* at 11–12, 16–18, 21–22, 24.

In its original Complaint, Plaintiff alleged in conclusory fashion that GM LLC and GMF "colluded" to prevent third-party dealers from obtaining leased vehicles and selling them off-lease.  But, in reality, GMF simply exercised its contractual right to have authorized GM dealerships process lease returns.  GMF's leases make clear that the consumer (the "lessee") is ***always free to buy the leased vehicle outright*** for the agreed-upon, specified residual price.  GMF's leases during the relevant period have also ***always*** provided and disclosed that the purchase option is ***not assignable*** to anyone else.  Consumers today remain entitled to ***exactly*** what they agreed to in their GMF leases: to themselves buy the leased vehicle at the agreed-upon, specified price. Consumers may then re-sell the vehicle to whomever they want (if they so choose).

California's antitrust and unfair competition laws expressly protect GMF's authority to choose with whom it will do business and under what terms. Notwithstanding this well-established right, GMF has, sometimes and ***as a courtesy***, allowed non-parties to directly pay off leases and buy vehicles.  GMF ended this

courtesy after the start of the COVID-19 pandemic, which Plaintiff acknowledged resulted in "severe disruptions to the global supply chain" and a "shortage of vehicles." Plaintiff's real complaint was that it, as a stranger to GMF's leases, cannot avail itself of what it calls the "privilege" of the leases' purchase options, buy the vehicles at below market rates, and then resell them for substantial sums alongside the exotic Aston Martins, Bentleys, Ferraris, Lamborghinis, and Rolls-Royces it touts on its website. The Court's Order recognized there is nothing unlawful about this.

Instead of amending its Complaint and attempting to cure the deficiencies in its Cartwright Act and UCL "unlawful" prong claims, Plaintiff ***abandoned*** them. Plaintiff now brings a new Complaint that attempts to plead a sole UCL claim seeking injunctive relief under the "unfair" prong. This claim—which includes allegations that Plaintiff erroneously copied and pasted from a different lawsuit against Mercedes Benz and its leasing subsidiary—fares no better. There are at least four independently sufficient grounds to dismiss Plaintiff's Complaint again:

*First*, Plaintiff's conclusory Complaint again fails to include any specific allegations regarding GM LLC. The Court previously recognized that "GM LLC is a vehicle manufacturer," while GMF "is a lender." As the lessor, GMF—not GM LLC—owns the leased vehicles that are the subject of this lawsuit. Plaintiff's claim is based on purported restrictions as to whom and on what terms GMF makes its leased vehicles available for purchase during its leases. Far from alleging why it is plausible to infer that GM LLC had any role in the challenged conduct, Plaintiff includes ***no allegations whatsoever*** as to GM LLC. "Group pleading" rules bar Plaintiff's "sue first, figure it out later" approach. Moreover, since Plaintiff states no allegations against GM LLC, Plaintiff fails to establish that any purported loss is the "result of" anything that GM LLC purportedly did. This deficiency further dooms Plaintiff's ability to establish causation under the UCL as to GM LLC.

*Second*, Plaintiff fails to establish standing under the UCL, which requires that it "lost money or property." While Plaintiff alleges in general, conclusory terms a

purported, increased difficulty in acquiring previously-leased GM vehicles, it does not support these empty assertions with any factual allegations sufficient to establish economic loss.  Indeed, another court in this District recently dismissed Plaintiff's similar UCL claim against BMW and its leasing subsidiary for this very reason.  Nor does Plaintiff's claim have any plausible basis: it is free to buy previously-leased GM vehicles from lessees that have bought out their vehicles or other non-leased GM vehicles.  Plaintiff's own website confirms as much; it recently offered a previously-owned Cadillac Escalade for sale (for over $120,000).

*Third*, the UCL provides only equitable relief, but Plaintiff never establishes why legal remedies are inadequate.  In previously dismissing on this basis, the Court concluded that Plaintiff failed to allege "all available legal remedies are inadequate" under the Ninth Circuit's binding *Sonner* decision.  While Plaintiff now includes talismanic allegations that "Plaintiff and the Class lack an adequate remedy at law" and that an injunction is necessary to prevent "further harm," these are nothing more than threadbare recitals that cannot satisfy its pleading burden.  The implausibility of these threadbare assertions is further underscored by the fact that Plaintiff can still obtain used GM vehicles to sell, as confirmed by Plaintiff's own webpage.

*Fourth*, Plaintiff alleges no conduct that is "unfair" under the governing "competitor" test (or any other UCL test).  The California Supreme Court has made clear that courts must be "careful" in construing what conduct is "unfair" under the UCL so as to not enjoin valid business conduct, including the fundamental right to choose with whom to deal.

Plaintiff's unusual decision to file a new Complaint, rather than amend, should not give it multiple attempts to cure its pleading deficiencies.  Plaintiff cannot, warranting dismissal of the Complaint—and its sole cause of action for purported violation of the UCL—with prejudice.  And because Plaintiff's Complaint defines an improper "fail-safe" class, the Court should also strike its class allegations.

## II.   RELEVANT ALLEGATIONS AND BACKGROUND

### A.   The Parties

Plaintiff is a used automobile dealer that is unaffiliated with GM and is based in Calabasas, California.  Compl. ¶¶ 8, 56.  Plaintiff describes itself as specializing in "high-end luxury used" vehicles.  *Id.* ¶ 56.  Indeed, Plaintiff's website indicates that "we have a wide selection of exotic cars including Lamborghini, Ferrari, Rolls Royce, Porsche, Aston Martin, Hummer, Mercedes Benz, and much more."  *See* GM LLC's Request for Judicial Notice ("RJN"), Ex. A.

GM LLC and GMF are both ultimate, wholly-owned subsidiaries of their common parent, General Motors Company.



Dkts. 15, 17.  As the Court explained in its prior dismissal order: "GM LLC is a vehicle manufacturer, and" GMF "is a lender."  *Calabasas Luxury Motorcars*, *Inc. v. General Motors LLC*, *et al*., Case No. 2:21-cv-09566-TJH (C.D. Cal.), Dkt. 32 ("Order") at 5.  Thus, GMF offers loans and lease finance products, while GM LLC manufactures and distributes vehicles to licensed dealers.  Licensed automobile dealers sell used vehicles to California consumers, not GM LLC or GMF.

### B.   Procedural History

Plaintiff filed its prior putative class action against GM LLC and GMF on December 10, 2021.  *See Calabasas Luxury Motorcars*, *Inc. v. General Motors LLC*, *et al*., Case No. 2:21-cv-09566-TJH (C.D. Cal.) ("*Calabasas I*"), Dkt. 1.  In that case, Plaintiff sought to represent "all non-GM vehicle dealerships in California whose [alleged] rights to accept trade-in vehicles and purchase GM leased vehicles have

1  [purportedly] been violated as a result of Defendants' wrongful conduct." *Calabasas*
2  *I*, Dkt. 1 ¶ 64.  Plaintiff's earlier complaint asserted claims for purported violations of
3  the Cartwright Act and the UCL (under the UCL's "unlawful" and "unfair" prongs).

4       GM LLC and GMF each moved to dismiss Plaintiff's prior complaint on
5  February 25, 2022.  *Calabasas I*, Dkts. 17, 18.  GM LLC also moved to strike
6  Plaintiff's class allegations on the ground that Plaintiff had defined an improper "fail-
7  safe" class. *Calabasas I*, Dkt. 18.  Plaintiff filed oppositions to GM LLC's and GMF's
8  motions on March 18, 2022.  *Calabasas I*, Dkts. 20, 21.  GMF and GM LLC filed
9  their reply briefs on March 31, 2022, and April 1, 2022.  *Calabasas I*, Dkts. 26, 27.

10      This Court granted Defendants' motions to dismiss and dismissed Plaintiff's
11  claims without prejudice on August 25, 2022.  *See* Order.  As to Plaintiff's Cartwright
12  Act claim, the Court determined that GM LLC and GMF—as "two arms of the same
13  economic conglomerate"—were incapable of "conspiring with each other" pursuant
14  to the single enterprise rule.  *Id.* at 4–5.  The Court dismissed Plaintiff's claim under
15  the UCL's unlawful prong, finding Plaintiff had failed to establish a predicate
16  violation based on the Cartwright Act (or any purported "common law conspiracy"),
17  Cal. Veh. Code § 11709.4, or Cal Civ. Code § 2987.  *Id.*  The Court further explained
18  that as to the Civil and Vehicle Code Sections, "there is nothing in those statutes or,
19  apparently, in case law, that requires trade-ins to take place." *Id.* at 5–6.  The Court
20  also dismissed Plaintiff's UCL "unfair" prong claim "[b]ecause [Plaintiff] failed to
21  allege . . . that it has no adequate legal remedy[.]"  *Id.* at 7.  Given the dismissal of
22  Plaintiff's claims, the Court denied GM LLC's motion to strike as moot.  *Id.*

23      Plaintiff then filed the present putative class action ("*Calabasas II*") against
24  GM LLC and GMF on September 15, 2022. Dkt. 1 ("Compl.").  This case (*Calabasas
25  II*) was re-assigned to this Court on September 16, 2022, as an "identical" case to
26  Plaintiff's prior *Calabasas I* suit.  Dkt. 7.  On October 24, 2022, the Court instructed
27  the parties to proceed with the docket in *Calabasas II*, rather than the docket in
28  *Calabasas I*, and then closed *Calabasas I*.  *See Calabasas I*, Dkt. 35.

On October 25, 2022, the parties stipulated to a briefing schedule for Defendants' responsive pleadings. *Calabasas II*, Dkt. 14. The Court entered the parties' stipulation on October 26, 2022. *Calabasas II*, Dkt. 16.

**C.** **Plaintiff's Present Complaint and Allegations**

Generally speaking, a consumer may either purchase a vehicle outright, or lease it. When the consumer leases a vehicle, the consumer (the "lessee") pays a "monthly lease payment" to the "lessor" (the owner of the vehicle). Compl. ¶ 26. The "lessee" does ***not*** own the vehicle; the "lessee" is paying to use the vehicle "during the term of the lease[.]" *Id.* ¶¶ 26–28. The lessee may, however, "purchase the vehicle during the term of the lease, or at the end of the lease," by exercising a "purchase option" in the lease and buying the car at a pre-agreed price specified in the lease. *Id.* ¶¶ 26, 28, 31. Plaintiff's allegations are based on the ways in which GMF (the lessor) makes leased vehicles available for purchase during or at the end of their leases.

Plaintiff alleges that, previously, a lessee could "take their [leased] GM to a non-GM brand dealer" and "trade in their [leased] GM for a new vehicle by transferring their GM lease's purchase option over to the different brand dealer". Compl. ¶ 31. In this way, Plaintiff avers that non-GM dealers could "pay off the [leased] vehicles"—by tendering the price specified in the purchase options of the leases to which they are not parties—and then "take title." *Id.* ¶¶ 29, 31, 56. Plaintiff further alleges that this process "[r]ecently" changed due to the COVID-19 pandemic, and that Defendants now do not "allow non-GM dealerships to accept leased GM vehicles as a trade-in," and do not "allow consumers to sell their [leased] vehicles to non-GM dealerships." *Id.* ¶¶ 22, 39, 45. As a result, Plaintiff baldly claims that if Defendants' "conduct is allowed to continue unabated, it will result in the elimination of the sale of used GM vehicles at non-GM dealerships." *Id.* ¶ 47.

GMF has, at times and in its sole discretion, sometimes allowed non-parties to directly pay off leases and buy vehicles where the lessee has sought to end the lease early. But GMF's leases during the relevant time period (including pre-COVID) have

*always* provided and disclosed that the lessee's interests under the lease—including the purchase option—are ***not assignable***.  Dkt. 20 at 9 (example of GMF lease, providing that "**You may not assign the Lease or transfer the Vehicle without our prior written permission**.").  GMF, therefore, has always had the right to choose whom may acquire its owned assets, and under what circumstances.  Consumers continue to enjoy exactly what they agreed to in their GMF leases: the ability to themselves buy the leased vehicles at the agreed-upon price.  At that point, they can sell the vehicle to whomever they want (including Plaintiff), if they so choose.

Plaintiff alleges that the complained of conduct "will result in the elimination of the sale of used GM vehicles at non-GM dealerships."  Compl. ¶ 47.  But Plaintiff and other unaffiliated dealers can purchase used GM vehicles that either are not leased, or that lessees have bought out.  Plaintiff's website itself confirms Plaintiff's continued access to used GM vehicles, this week listing in its "Previously Enjoyed Inventory" a used Cadillac Escalade for sale for more than $120,000.



RJN, Ex. B.

Plaintiff seeks to represent a putative class consisting of "all non-GM vehicle dealerships in California who have been harmed as a result of Defendants' unfair business practice of refusing to allow third-party payoffs of their vehicles' purchase options."  Compl. ¶ 64.  The Complaint asserts a single claim under the UCL's unfair prong and seeks injunctive relief, attorneys' fees and costs, and interest.

### III.   LEGAL STANDARDS

Dismissal is required "when a complaint lacks either a cognizable legal theory

or sufficient facts alleged under such a theory." *In re German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d 745, 753 (N.D. Cal. 2020) (citations omitted). "Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, evaluating a complaint's allegations "requires the reviewing court to draw on its judicial experience and common sense." *Eclectic Props. E.*, *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014). In doing so, "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d at 753–54.

"The decision of whether to grant leave to amend" is "within the discretion of the district court[.]" *Leadsinger*, *Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Leave to amend is properly denied where a plaintiff "ha[s] not identified any additional allegations that could save [its] complaint from dismissal." *Gingery v. City of Glendale*, 831 F.3d 1222, 1231 (9th Cir. 2016).

# IV.   <u>ARGUMENT</u>

## A.   <u>Plaintiff Fails to Identify GM LLC's Role in the Challenged Conduct</u>

Plaintiff vaguely alleges that "Defendants have engaged in unfair business practices" and that "Defendants violated the UCL." Compl. ¶¶ 70, 72. But the Complaint includes *no* allegations as to GM LLC's specific, purported role in the challenged conduct. "[C]ourts in this circuit have held that a complaint fails to state a claim and must be dismissed if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act." *Polsky v. Ramnani*, 2018 WL 6133406, at *4 (C.D. Cal. Mar. 26, 2018) (internal citation omitted). The Complaint's failure to do this requires the UCL claim's dismissal for several reasons.

*First*, Plaintiff's group pleading violates Fed R. Civ. P. 8 and provides insufficient notice to GM LLC of the allegations against it.  *See* Fed R. Civ. P. 8. "[T]he underlying requirement of Federal Rule of Civil Procedure 8 is that a pleading give fair notice of the claim being asserted and the grounds upon which it rests." *ConsumerDirect*, *Inc. v. Pentius*, *LLC*, 2022 WL 1585702, at *5 (C.D. Cal. Apr. 4, 2022) (internal citation and alteration omitted).  Where, as here, a pleading contains "[g]eneral allegations as to all defendants," the pleading is "insufficient to put specific defendants on notice of the claims against them."  *NorthBay Healthcare Group*, *Inc. v. Kaiser Found. Health Plan*, *Inc.*, 2017 WL 6059299, at *8 (N.D. Cal. Dec. 7, 2017) (internal citation omitted).  In this way, Plaintiff's "group pleading" improperly inhibits Defendants from knowing what Plaintiff accuses each of doing, in turn affecting their preparation of their defenses.

*Second*, Plaintiff's group pleading renders Plaintiff incapable of establishing that it is ***plausible***—as is required under *Twombly*, *Iqbal*, and their progeny—that GM LLC played any role in the complained of conduct.   Indeed, group pleading "frustrate[s] the Court's ability to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Polsky*, 2018 WL 6133406, at *4.  This is because a pleading that "collectively accuse[s] multiple defendants of committing misdeeds through the expedience of the title 'Defendants'" does not allow the Court to separately determine—as to each defendant—whether a plaintiff has alleged "facts sufficient to 'to raise a right to relief above the speculative level.'"  *Woodard v. Barnum*, 2009 WL 10673491, at *1 (D. Ariz. Aug. 24, 2009).  Thus, "a complaint that repeatedly refers to defendants collectively, without differentiation, is more likely to run afoul of the plausibility standard of *Iqbal* and *Twombly*[.]"  *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012).

These concerns are manifest here.  The Court has already recognized that, generally speaking, GM LLC "is a vehicle manufacturer," while GMF "is a lender." Order at 5.  Moreover, GMF owns the leased vehicles, and the Complaint expressly

attributes the complained of conduct to GMF.  *See* Compl. ¶¶ 53–54.  At bottom, Plaintiff complains (mistakenly) of GMF's decisions as to whom, and under what terms, GMF makes its leased vehicles available for purchase.  But there is nothing unlawful or unfair in a business choosing for itself with whom it will or will not transact business and under what terms.  This is particularly true since consumers today remain entitled to exactly what they agreed to in their GMF leases: the ability to themselves purchase the vehicles at agreed-upon prices.  Plaintiff's Complaint provides no plausible basis to conclude otherwise or that GM LLC played any role.

Moreover, Plaintiff cannot simply name multiple defendants in a lawsuit and claim it will sort out later who purportedly did what.  An "assert-first-discover-later approach to litigation undermines the purpose of the pleading standards."  *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2013 WL 5614294, at *8 (C.D. Cal. Sept. 30, 2013).  A "well-pleaded complaint is the plaintiff's ticket to the next stage of proceedings, then—and only then—may the plaintiff obtain the benefits of, and likewise burden defendants with, discovery."  *Id.* (collecting cases).  Courts regularly dismiss UCL claims where a complaint "fail[s] to distinguish . . . between the defendants."  *Vargas v. JP Morgan Chase Bank, N.A.*, 2014 WL 3435628, at *5 (C.D. Cal. July 11, 2014) (UCL claim dismissed because "'rife' with examples of 'lump' or 'group' pleading"); *Ahmadi v. Nationstar Mortgage, LLC*, 2016 WL 7495826, at *2–*3 (C.D. Cal. Mar. 31, 2016) (similar).

*Finally*, Plaintiff's group pleading means it cannot satisfy the causation requirement under Cal. Bus. & Prof. Code § 17204.  Where "a plaintiff asserts a UCL claim against multiple defendants, that plaintiff must allege he suffered injury in fact or lost money or property ***as a result of*** alleged unfair competition ***by each defendant*** in order to have standing under California's UCL."  *Molina v. BAC Home Loan Servicing, LP*, 2012 WL 13015012, at *3 (C.D. Cal. Feb. 24, 2012) (emphases added).  Because Plaintiff has failed to allege anything specific to GM LLC, it does not allege how any purported loss was "a result of" anything that GM LLC allegedly did, and it

cannot satisfy this causation requirement as to GM LLC.  *See*, *e.g.*, *Molina*, 2012 WL 13015012, at *3 (UCL claim dismissed against specific defendants for lack of causation where plaintiff failed to explain how those defendants purportedly contributed to plaintiff's loss); *Dual Diagnosis Treatment Ctr.*, *Inc. v. Blue Cross of California*, 2017 WL 11467730, at *8 (C.D. Cal. Sept. 25, 2017) (similar).

Since Plaintiff nowhere describes GM LLC's purported role, the Court should dismiss Plaintiff's UCL claim.

**B.      Plaintiff's Conclusory Allegations Fail to Establish UCL Standing**

Plaintiff's UCL claim separately fails because Plaintiff does not plausibly allege any facts establishing that it has standing under the UCL.  Only a plaintiff that has "lost money or property as a result of the" alleged "unfair competition" has UCL standing.  Cal. Bus. & Prof. Code § 17204.  Plaintiff's allegations regarding any economic loss are entirely conclusory, and thus do not suffice to state a UCL claim.

Plaintiff vaguely alleges, for example, that:

- "Plaintiff . . . has had numerous putative customers attempt to trade-in their GM vehicles which were still under lease to Plaintiff, or sell their GM vehicles to Plaintiff, only to have Defendants refuse"; and

- "As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff has suffered injury in fact and lost money or property[.]"

Compl. ¶¶ 56, 74.  But an "absence of *facts* describing the money or property allegedly lost is fatal to a plaintiff's UCL claim."  *Ford v. Lehman Bros. Bank*, *FSB*, 2012 WL 2343898, at *8 (N.D. Cal. June 20, 2012) (emphasis in original) (dismissing UCL claim based on empty allegations of UCL standing).  These allegations come nowhere close to sufficiently describing Plaintiff's purportedly lost "money or property."

Another court in the Central District recently dismissed, for lack of UCL standing, the same Plaintiff's similar allegations against another vehicle manufacturer (BMW) and its leasing subsidiary.  *Calabasas Luxury Motorcars*, *Inc. v. BMW North America*, *LLC et al*, Case No. 2:21-cv-08825-DMG (C.D. Cal.) (Gee, J.) ("*BMW*"), Dkt. 31 at 4.  There, Plaintiff alleged that "as a proximate result of the [BMW]

Defendants' [alleged conduct] . . . Plaintiff and those similarly situated have sustained damages" and "Plaintiff has suffered injury in fact and a loss of money or property[.]" *BMW*, Dkt. 31 at 4.  The court found these UCL standing allegations lacked "any factual undergirding" and were thus "insufficient to state a claim under the UCL." *Id.*

The same is true here.  Plaintiff does not even attempt to quantify its purported losses.  *See BMW*, Dkt. 31 at 4 (dismissing same Plaintiff's UCL claim because Plaintiff "***does not quantify any loss of money that has occurred***") (emphasis added); *see also Shelton v. Ocwen Loan Servicing*, LLC, 2019 WL 4747669, at *12 (S.D. Cal. Sept. 30, 2019) (dismissing UCL claim for lack of standing because "[s]imply stating in conclusory fashion that money has been lost is insufficient.").  Nor does Plaintiff ***plausibly*** describe any specific business opportunity that was purportedly lost due to GM LLC.[2]  *See BMW*, Dkt. 31 at 4 (dismissing same Plaintiff's UCL claim because while Plaintiff "alleges a general increase in difficulty of acquiring BMWs," Plaintiff "***does not identify a single instance of specific economic harm***[.]") (emphasis added); *see also Creative Mobile Techs.*, *LLC v. Flywheel Software*, *Inc.*, 2016 WL 7102721, at *3 (N.D. Cal. Dec. 6, 2016) (dismissing UCL counterclaim based on allegation that "as a direct consequence of CMT's practices, [counterplaintiff] has lost substantial business opportunities" because "[t]his bare allegation does not plausibly allege a loss of money or property.") (internal alterations omitted).

---

[2]  Plaintiff does allege that "on November 4, 2021, an employee of Plaintiff contacted GM to inquire about a 'trade-in' with a third party," and that "a representative of GM responded that '**MB Dealers** are the only ones allowed to pay off an **MBFS Lease**…No 3rd party payoffs.' (See, Exhibit 1)." Compl. ¶¶ 57 (emphasis added). Although the Complaint suggests this purported communication is attached to the Complaint as "Exhibit 1," there is no such attachment.  The purported communication refers to "MB Dealers" and an "MBFS Lease," which appear to be references to Mercedes Benz and Mercedes Benz Financial Services.  Indeed, the same Plaintiff has also sued Mercedes Benz and Mercedes Benz Financial Services. *Calabasas Luxury Motorcars*, *Inc. v. Mercedes Benz USA, LLC et al*, Case No. 2:21-cv-08805-FMO (C.D. Cal.) (Olguin, J.).  Plaintiff's complaint against the Mercedes defendants includes an identical allegation regarding a purported November 4, 2021 communication regarding "MB Dealers," "MBFS," and "No 3rd party payoffs." *Mercedes*, Dkt. 1, ¶ 42. Plaintiff's allegations therefore appear completely untethered to GM LLC and GMF and should be disregarded.

1  Because Plaintiff has not plausibly alleged it has "lost money or property", it
2  lacks UCL standing.  On this basis alone, Plaintiff's claim should be dismissed.

3  **C.**   **Plaintiff Still Fails to Establish that Legal Remedies are Inadequate**

4  This Court previously dismissed Plaintiff's UCL claim because "only equitable
5  remedies are available for UCL claims," and Plaintiff "failed to allege . . . that it has
6  no adequate legal remedy" pursuant to the Ninth Circuit's binding *Sonner* decision.
7  Order at 6–7 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir.
8  2020)).  The same is true here.  Defendants dispute that Plaintiff is entitled to *any*
9  remedy, but even if Plaintiff were, it certainly has not established why ***legal*** remedies,
10  such as damages, are inadequate.

11  Plaintiff's Complaint now includes only the following allegations regarding the
12  inadequacy of legal remedies:

13  •   "Plaintiff and the Class will be unfairly excluded from an entire market of
14      previously leased GM vehicles—thereby leaving them without an adequate
        remedy at law."

15  •   "No adequate remedy exists at law for the injuries suffered insofar as further
16      harm will result to Plaintiff and the Class from Defendants' wrongful and unfair
        conduct in the absence of injunctive relief.  If this Court does not grant
17      injunctive relief of the type and for the purpose specified herein, Plaintiff and
        the Class will suffer irreparable injury."

18  •   "Plaintiff and the Class lack an adequate remedy at law because Defendants'
19      acts of unfair competition, as set forth above, present a continuing threat and
        will persist and continue unless and until this Court issues appropriate
20      injunctive relief."

21  Compl. ¶¶ 49, 61, 88.

22  Talismanic allegations that "Plaintiff and the Class" are left "without an
23  adequate remedy at law," that they "lack an adequate remedy at law," or that "[n]o
24  adequate remedy exists at law," merely recite *Sonner*'s legal requirements for
25  equitable relief.  This is insufficient to satisfy Plaintiff's pleading burden.  *See In re*
26  *ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 522484, at *72 (C.D. Cal.
27  Feb. 9, 2022) ("conclusory allegation" that "Plaintiff and Class members do not have
28  an adequate remedy at law" is "insufficient" for UCL claim); *Drake v. Toyota Motor*

*Corp.*, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (UCL claim dismissed as "Plaintiffs fail to include ***any substantive allegations*** that they lack an adequate legal remedy") (emphasis added); *Lisner v. Sparc Group LLC*, 2021 WL 6284158, at *8 (C.D. Cal. Dec. 29, 2021) (same, as "besides conclusory statements, Plaintiffs ***do not*** plead or ***explain why*** the remedies at law would be inadequate.") (emphasis added); *Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*, 2021 WL 5507225, at *5 (C.D. Cal. Nov. 24, 2021) (same, as plaintiff "makes no effort to allege . . . ***why*** her legal remedies . . . may be inadequate") (emphasis added).

Plaintiff's vague allegations about an injunction similarly do not salvage its UCL claim. For example, merely alleging that "[i]f this Court does not grant injunctive relief . . . Plaintiff and the Class will suffer irreparable injury" explains neither what that purported "irreparable injury" is, or why an injunction (rather than damages) is purportedly necessary. *See Teresa Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (UCL claim dismissed since a "conclusory statement about irreparable injury cannot survive a motion to dismiss"); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1113 (N.D. Cal. 2022) (allegation that "the only way" for plaintiff "to protect its property and protect its rights is to obtain an injunction" insufficient because complaint "provides no explanation and alleges no facts as to why a legal remedy is inadequate to remedy [t]his alleged harm").

Plaintiff also rotely suggests the need for an injunction based on alleged "continuing" and future harm. But this bare-bones assertion, divorced from any facts, does not establish that legal remedies are inadequate. *See Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (dismissing UCL claim because "that Plaintiffs seek prospective injunctive relief . . . does not exempt this case from *Sonner*"); *Drake*, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (similar, because while "Plaintiffs argue injunctive relief is necessary to prevent future harm, there is no reason to think legal remedies, like damages, will not be sufficient to make future plaintiffs whole"); *Wu v. iTalk Glob. Commc'ns, Inc.*, 2021 WL 5176799, at *3–*4

1    (C.D. Cal. Feb. 2, 2021) (similar, based on *Sonner* and rejecting argument that legal
2    remedies inadequate and injunction necessary based on purported "continual injury").
3          Nor would it be ***plausible*** to infer that an injunction is necessary.  Plaintiff's
4    own website confirms Plaintiff can still obtain used GM vehicles to re-sell.  *See* RJN,
5    Ex B (Plaintiff's website, as of December 5, 2022, listing previously-owned Cadillac
6    Escalade for sale for over $120,000); *cf. Banks v. R.C. Bigelow*, *Inc.*, 536 F. Supp. 3d
7    640, 649 (C.D. Cal. 2021) (dismissing UCL claim under *Sonner* because "Plaintiffs
8    cannot seek equitable relief absent ***plausible*** allegations that they lack an inadequate
9    legal remedy.") (emphasis added).
10         The UCL provides for only equitable relief, but Plaintiff has failed—despite
11   multiple attempts—to establish its entitlement to such relief.  Its UCL claim fails.
12   **D.      Plaintiff Fails to Allege "Unfair" Conduct**
13         Plaintiff alleges that "Defendants have engaged in unfair business practices" in
14   violation of the UCL's unfair prong.  *See* Compl. ¶¶ 69, 75–88.  "The UCL, however,
15   does not define the term 'unfair[.]'"  *Drum v. San Fernando Valley Bar Ass'n*, 182
16   Cal. App. 4th 247, 253 (2010).  Courts have therefore fashioned various tests "to
17   determine whether a business practice is unfair," including the "competitor,"
18   "balancing," "tethering," and "FTC" tests.  *Id.* at 253–57.
19         The Court previously suggested that the balancing test applied to Plaintiff's
20   unfair prong claim and then proceeded to dismiss the claim based on Plaintiffs' failure
21   to establish the inadequacy of legal remedies.  *See* Order at 6–7 (citing *S. Bay*
22   *Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)).  GM LLC
23   respectfully submits that the competitor test governs Plaintiff's UCL claim.  The
24   Ninth Circuit has explained that for "business-competitor claims," the competitor test
25   applies.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014); *accord Sybersound*
26   *Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1152–53 (9th Cir. 2008).  This is true even
27   where the purported unfairness is ***not*** "to the *defendant's* competitors," but instead to
28   the UCL plaintiff, to the benefit of the ***UCL plaintiff's competitors***.  *Yelp!*, 765 F.3d

at 1136 (emphasis in original).  For this reason, another court in the Central District recently determined that only the competitor test applied to Plaintiff's near-identical UCL unfair prong claim against BMW and its leasing subsidiary.  *BMW*, Dkt. 31 at 3 (dismissing claim).  Plaintiff alleges that it is a competitor of Defendants.  Compl. ¶¶ 49, 51.  Because Plaintiff fails to state a claim under the competitor test, as well as the other tests even if they were applied, the Court should dismiss Plaintiff's UCL claim.

### 1.    *Plaintiff Fails the "Competitor" Test*

Under the governing "competitor" test, "a business practice is 'unfair' only if it threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws[.]"  *Drum*, 182 Cal. App. 4th at 254.  Plaintiff fails that test.  Plaintiff's allegations do not, and cannot, form the basis for an antitrust claim, whether based on a theory of multilateral conduct, or of unilateral conduct.  Despite previously asserting a Cartwright Act claim, Plaintiff has tellingly dropped that claim.  As to multilateral conduct, this Court has already determined that Plaintiff failed to plead an antitrust claim because GM LLC and GMF are both subsidiaries of General Motor Company and therefore cannot "conspire."  *See* Order at 4–5.  Plaintiff cannot repackage this failed antitrust "conspiracy" claim into one under the unfair prong.  *See City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.").

The same is true when Plaintiff's allegations are construed under the unilateral conduct rubric.  Plaintiff alleges that "Defendants have refused to allow Plaintiff to pay off the vehicles and take title."  Compl. ¶ 56.  But the Court has already determined GM LLC and GMF must be considered a single economic actor, Order at 4–5, and "the right to refuse to deal remains sacrosanct" under the UCL.  *People's Choice Wireless*, *Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 667–68 (2005) (unfair prong claim properly dismissed because "this case involves nothing more than

1   a permissible refusal to deal with the Independent Dealers"); *Drum*, 182 Cal. App.

2   4th at 254 (unfair prong claim dismissed under "competitor test" because "a private

3   party generally may choose to do or not to do business with whomever it pleases").

4        Another court recently dismissed Plaintiff's similar UCL unfair prong claim

5   against BMW and its leasing subsidiary, under the competitor test, on this very basis.

6   *BMW*, Dkt. 31 at 4.  There, the court noted that "BMW FS is a wholly owned

7   subsidiary of BMW NA and, as such, the two defendants are treated as one entity with

8   a single unity of interest." *Id.*  The court further explained that "the antitrust laws do

9   not preclude a trader from unilaterally determining the parties with whom it will deal

10  and the terms on which it will transact business." *Id.*  The court dismissed Plaintiff's

11  UCL unfair prong claim, because the competitor test requires "evaluat[ing] whether

12  BMW's conduct violates antitrust law," and BMW's conduct did not.  *Id.* at 3–4.

13       Plaintiff's allegations do not state an antitrust claim.  They thus do not amount

14  to an "incipient violation of an antitrust law," or violate the "policy or spirit" of the

15  antitrust laws.  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (unfair

16  prong claim dismissed under competitor test where no antitrust claim stated because

17  to "permit a separate inquiry into essentially the same question under the unfair

18  competition law would only invite conflict and uncertainty and could lead to the

19  enjoining of procompetitive conduct").  For these reasons, Plaintiff fails to state an

20  unfair prong claim under the competitor test, and its UCL claim should be dismissed.

21       **2.   *Plaintiff Fails the "Balancing" Test***

22       Even if the Court were to apply the balancing test, which Defendants

23  respectfully state is not applicable, Plaintiff does not satisfy it.  The balancing test

24  assesses "whether the alleged business practice is immoral, unethical, oppressive,

25  unscrupulous, or substantially injurious[.]" *Drum*, 182 Cal. App 4th at 257 (internal

26  citation and quotation marks omitted).  This requires a court "to weigh the utility of

27  the defendant's conduct against the gravity of the harm to the alleged victim." *Id.*

28  The California Supreme Court has rejected the application of the balancing test to a

competitor claim.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 184–85 (1999).[3]  Indeed, the Ninth Circuit has likewise recognized that the California Supreme Court has rejected "the balancing test" in "suits involving unfairness to the defendant's competitors."  *Lozano v. AT & T Wireless Servs.*, *Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).

Here, Plaintiff alleges that it is a competitor.  Compl. ¶¶ 49, 51.  In such cases, courts regularly decline to apply the balancing test based on the California Supreme Court's *Cel-Tech* and the Ninth Circuit's *Lozano* decisions.  *See Distance Learning Co. v. Maynard*, 2020 WL 2995529, at *10 (N.D. Cal. June 4, 2020) (citing *Cel-Tech* and *Lozano* and finding that "the traditional balancing test does not apply" because case involved "competitors").  Indeed, as indicated above, *see supra* at 16, the court in the *BMW* case recently determined that the balancing test did not apply to Plaintiff's near-identical UCL unfair prong claim because the balancing test is "used to evaluate unfairness in consumer cases, not between business competitors."  *See BMW*, Dkt. 31 at 3 (citing *Cel-Tech*).  That same reasoning is fully applicable here.  In any case, Plaintiff's UCL claim fails under the balancing test, as a matter of law.

*First*, Plaintiff's allegations under the balancing test are entirely conclusory.  Plaintiff alleges that "Defendant's business practices are unfair because they . . . are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers[.]"  Compl. ¶ 77.  These allegations merely repeat the elements of the balancing test and do not suffice to state a UCL claim.  *See*, *e.g.*, *Schertzer v. Bank of Am.*, *N.A.*, 445 F. Supp. 3d 1058, 1091 (S.D. Cal. 2020) (unfair prong claim dismissed under balancing test because "stringing together a handful of adjectives" is mere recitation of elements); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D.

---

[3]  *See also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) ("The California Supreme Court has rejected the traditional balancing test for UCL claims between business competitors"); *Williamson v. McAfee*, *Inc.*, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) (similar, noting that "[t]he California Supreme Court . . . considers this standard 'too amorphous'").

Cal. 2012) (UCL claim dismissed under balancing test because "conclusory statements" do not establish "any basis for concluding that this injury outweighs the reasons, justifications and motives of Defendants").

*Second*, a ***disclosed*** practice is not "unfair" and does not satisfy the balancing test. In *Davis v. HSBC Bank Nevada*, for example, the Ninth Circuit affirmed, under the balancing test, the dismissal of an unfair prong claim based on a retailer's purportedly unfair assessment of an annual fee. 691 F.3d 1152, 1169–70 (9th Cir. 2012). Applying the balancing test—as articulated in *S. Bay Chevrolet*, the same case this Court cited (Order at 6)—the Ninth Circuit determined that, as a matter of law, the assessment of the fee was not unfair because it was "***clearly disclosed***[.]" *Id.* at 1170 (emphasis added). Where, as here, the "unfair" practice is disclosed to consumers, other courts have likewise dismissed UCL claims at the pleading stage under the balancing test. *See*, *e.g.*, *Singh v. Google Inc.*, 2017 WL 2404986, at *4 (N.D. Cal. June 2, 2017) (unfair prong claim dismissed under balancing test because "risk" that was basis for claim "disclose[d] . . . in the Agreement and elsewhere"); *Shvarts v. Budget Group*, *Inc.*, 81 Cal. App. 4th 1153, 1157–60 (2000) (demurrer to "unfairness" prong claim properly sustained under balancing test where claim based on imposition of fee that is "clearly printed, in boldface, in the rental agreement").

Here, consumers today remain entitled to exactly what they agreed to in their leases with GMF—the opportunity to, themselves, buy out their leased vehicles from GMF based on the agreed-upon purchase price. GMF's leases during the relevant period have always made clear to consumers that their interests under the lease—including what Plaintiff calls the "privilege" of the purchase option—are ***not*** assignable. *See* Dkt. 20 at 6, 9, 12. There is nothing unfair in GMF enforcing a right it has always had and fully disclosed to consumers.

*Finally*, Plaintiff's suggestion that the balancing test is satisfied because "Defendants' conduct does not benefit consumers or competition" is implausible, incorrect, and should be rejected. Vertical non-price terms are ***pro-competitive*** and

1  benefit competition. *Cont'l T. V.*, *Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54–57, 56
2  n.23 (1977) ("[v]ertical restrictions promote interbrand competition," provide for
3  "efficiencies," ensure product "safety and quality," and protect brand "goodwill").

4      Moreover, as demonstrated above, the law ***protects*** a business's right to choose
5  with whom it will deal, and under what terms. *People's Choice*, 131 Cal. App. 4th at
6  663. A business's exercise of this right is, contrary to Plaintiff's aspersions, a benefit.
7  This is why—assuming the balancing test even applies—courts regularly dismiss
8  under the balancing test, and at the pleading stage, unfair prong claims based on a
9  business's exercise of its freedom to choose with whom it will deal. *See In re*
10 *Qualcomm Litig.*, 2017 WL 5985598, at *7–*8, *10 (S.D. Cal. Nov. 8, 2017)
11 (concluding that competitor test is proper test and dismissing unfair prong claim, and
12 noting that even "[i]n the alternative," unfair prong claim properly dismissed under
13 balancing test as purportedly unfair conduct "***justified by Apple's right to choose with***
14 ***whom it does business***") (emphasis added).

15     Plaintiff also concedes that the COVID-19 pandemic has caused "severe
16 disruptions to the global supply chain of motor vehicles." Compl. ¶ 22. In fact,
17 Plaintiff specifically attributes the complained of conduct to the pandemic, alleging
18 the "change" was "enacted" to "ensure GM dealerships have priority access to the
19 vehicles coming back to market" and to "support" them "through the current
20 economic environment and the challenges they're encountering sourcing quality pre-
21 owned vehicles." *Id.* ¶¶ 22, 53. Managing short supply during a global pandemic is
22 hardly unfair. *Cf. Thomas v. Amerada Hess Corp.*, 393 F. Supp. 58, 74 (M.D. Pa.
23 1975) ("when faced with a shortage of impending scarcity," the decision to "impose
24 a rationing program on or allocate scarce supplies" to "then-existing customers and
25 meanwhile refuse to acquire new accounts is reasonable business behavior").

26     The UCL does not allow for the "appl[ication]" of "purely subjective notions
27 of fairness." *Coffee v. Google*, *LLC*, 2022 WL 94986, at *14 (N.D. Cal. Jan. 10,
28 2022). Indeed, the California Supreme Court has specifically explained that in

1  applying the UCL's unfair prong, "[c]ourts must be careful not to make economic
2  decisions." *Cel-Tech*, 20 Cal. 4th at 185.  Because Plaintiff fails to allege any conduct
3  that is unfair under the balancing test, the Court should dismiss its UCL claim.

4       ### 3.   ***Plaintiff Fails the "Tethering" Test***

5       To state a claim under the "tethering" test, Plaintiff must establish a violation
6  of "public policy" that is "tethered to specific constitutional, statutory, or regulatory
7  provisions." *Drum*, 182 Cal. App. 4th at 257.  The Ninth Circuit has explained that
8  "[t]o determine whether something is sufficiently 'tethered' to a legislative policy for
9  purposes of the unfair prong, California courts require a close nexus between the
10  challenged act and the legislative policy." *Hodsdon v. Mars*, *Inc.*, 891 F.3d 857, 866
11  (9th Cir. 2018).  Courts have declined to apply the tethering test in competitor cases.
12  For this reason, the court in the *BMW* case declined to apply the tethering test to
13  Plaintiff's nearly-identical unfair prong claim against BMW and its leasing
14  subsidiary. *BMW*, Dkt. 31 at 3.

15       In any case, Plaintiff fails to meet the tethering test.  Plaintiff alleges that
16  "Defendant's unfair conduct is tethered to its interference with Plaintiff's statutory
17  rights pursuant to Vehicle Code § 11709.4 and Civil Code § 2987."  Compl. ¶ 78.
18  While Plaintiff touts the phrase "tethered," *id.* ¶¶ 75, 78, 84, its Complaint contains
19  ***zero*** allegations as to any "legislative policy."   Plaintiff's failure to identify any
20  "legislative policy" whatsoever is fatal to its unfair prong claim under the tethering
21  test.  *See Ajzenman v. Office of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1081
22  (C.D. Cal. 2020) (unfair prong claim dismissed under tethering test because
23  "Plaintiffs have not identified any legislative policy Defendants have violated.");
24  *Milman v. FCA U.S.*, *LLC*, 2019 WL 3334612, at *8 (C.D. Cal. Apr. 15, 2019) (same,
25  as plaintiff's allegations "fail to identify any legislative policy"); *Goldsmith v. CVS*
26  *Pharmacy*, *Inc.*, 2020 WL 3966004, at *6 (C.D. Cal. May 5, 2020) (same, since
27  "Plaintiff does not identify any legislatively declared policy that was offended").

28       To the extent Plaintiff means to rely on some on some unidentified policy

underpinning Cal. Vehicle Code § 11709.4 and Cal. Civil Code § 2987, its claim still fails.  This Court has already ***rejected*** Plaintiff's claims that these statutes "impliedly created a statutory consumer right to trade in leased vehicles at any dealership, and a related right of automobile dealers to accept trade-ins[.]"  Order at 6.  The Court explained that while these statutes "govern any trade-ins that might take place," "there is nothing in those statutes, or apparently, in case law, that requires trade-ins to take place," and Plaintiff "again, provided no authority to support its argument."  *Id.*

Nothing has changed.  Plaintiff provides no new allegations whatsoever regarding Vehicle Code § 11709.4 and Civil Code § 2987.  Because GM LLC has not violated these statutes, they cannot form the basis of an unfair prong claim under the tethering test.  *See Drum*, 182 Cal. App. 4th at 257 (no unfair prong claim stated under tethering test where "plaintiff failed to allege any violation" of "any statutory or regulatory provision").  The Court should therefore dismiss Plaintiff's UCL claim.

### 4.   *Plaintiff Fails the "FTC" Test*

The "FTC" test "draws on the definition of 'unfair' in section 5 of the Federal Trade Commission Act, and requires that (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Drum*, 182 Cal. App. 4th at 257 (internal citations and quotation marks omitted).  Courts have declined to apply the FTC test in business competitor cases.  For this reason, the court in *BMW* declined to apply the FTC test to Plaintiff's unfair claim prong against BMW and its leasing arm, explaining it is "not appropriate" in cases involving "business competitors."  *BMW*, Dkt. 31 at 3.  The Ninth Circuit has also cautioned against the FTC test's application "in the absence of a clear holding from the California Supreme Court."  *Lozano*, 504 F.3d 718 at 736.  Even if the Court were to apply the FTC test, Plaintiff's Complaint does not meet it.

*First*, while Plaintiff attempts to avail itself of the FTC test, its allegations are entirely conclusory.  Indeed, Plaintiff alleges only that "Defendants' conduct does not

benefit consumers or competition," "Defendants' conduct only benefits Defendants themselves," and "Plaintiff could not reasonably avoided the injury suffered or the injury that will be suffered." Compl. ¶ 83. This allegation is nothing more than an improper "[t]hreadbare recital[] of the elements of" the FTC test. *Iqbal*, 556 U.S. at 678. The Complaint therefore does not suffice because it includes no non-conclusory allegations regarding the FTC test's elements. *See Tellone Prof'l Ctr. LLC v. Allstate Ins. Co.*, 2021 WL 1254360, at *5 (C.D. Cal. Jan. 26, 2021) (dismissing unfair prong claim under FTC test because allegations "conclusory").

*Second,* Plaintiff's allegations as to each of the FTC test's elements are not plausible (and are incorrect). Plaintiff fails to describe how, for example, ***consumers*** have suffered "substantial injury." Consumers are ***always*** free to exercise the purchase option in their GMF leases and buy their leased vehicles for the agreed-upon purchase price; they can then sell the vehicles to whomever they want. Moreover, GMF's leases during the relevant time period have ***always*** made clear that the leases (and thus their purchase options) are not assignable. Dkt. 20 at 6, 9, 12. Consumers receive *exactly* what they agreed to in their leases with GMF, and GMF's enforcing a right it has always had and disclosed to consumers is not "unfair." *See Mcgee v. Diamond Foods*, *Inc.*, 2016 WL 816003, at *6–*7 (S.D. Cal. Mar. 1, 2016) (unfair prong claim dismissed under FTC test for lack of substantial injury, as practice disclosed and "***plaintiff received the benefit of her bargain***") (emphasis added).

Even assuming there were any "substantial injury" to consumers (there is not), Plaintiff also fails to allege why that purported injury was not "reasonably avoidable". Again, as indicated above, GMF's leases during the relevant period have always disclosed that the leases (including the purchase option) are not assignable, and that assignment without authorization would result in default. Dkt. 20 at 6, 9, 12. If a consumer did not wish to agree to this term, then the consumer could have avoided it by ***not*** entering into a lease with GMF and instead leasing from a different lessor. *See Mcgee*, 2016 WL 816003, at *6 (unfair prong claim dismissed under FTC test since

1   "any alleged injury suffered by Plaintiff could have been easily avoided at Plaintiff's

2   discretion" by picking any one of "a vast amount of other . . . products she could have

3   selected"); *Simpson v. California Pizza Kitchen*, *Inc.*, 989 F. Supp. 2d 1015, 1026

4   (S.D. Cal. 2013) (similar, as plaintiff "could have avoided her injury by purchasing"

5   other "products instead"). Indeed, in rejecting Plaintiff's unfair prong claim against

6   BMW and its leasing subsidiary, another court recently recognized consumers have

7   choices for leased vehicles. *BMW*, Dkt. 31 at 4.

8       Plaintiff's unsupported allegation that "Defendants' conduct does not benefit

9   consumers or competition" and "only benefits Defendants themselves" is also

10  baseless. Compl. ¶ 83. At bottom, Plaintiff complains that "Defendants will only

11  allow the consumer to trade in the vehicle with GM brand vehicle dealerships." *Id.* ¶

12  41. Assuming that were true, it is a classic non-price, vertical restraint. As the Ninth

13  Circuit and the Supreme Court have noted, such "vertical restraints . . . are ***often pro-***

14  ***competitive***." *Brantley v. NBC Universal*, *Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012)

15  (emphasis added); *GTE Sylvania Inc.*, 433 U.S. at 54–57, 56 n.23 (noting that

16  "[v]ertical restrictions promote interbrand competition," provide for "efficiencies,"

17  ensure product "safety and quality," and protect brand "goodwill"). Plaintiff has

18  failed to state an unfair prong claim under the FTC test.

19  **E.     The Court Should Dismiss with Prejudice**

20      The Court previously dismissed Plaintiff's Cartwright Act and UCL claims

21  (under both the UCL's "unlawful" and its "unfair" prongs) against Defendants

22  without prejudice, providing Plaintiff the opportunity to amend its claims. *See* Order.

23  Plaintiff then filed the present Complaint—now asserting only a single claim under

24  the UCL's "unfair prong"—as part of a new lawsuit against Defendants.

25      Plaintiff's only remaining claim, the UCL "unfair" prong claim, remains

26  deficient as demonstrated throughout this Motion. Because further amendment would

27  be futile, and this Court already has ruled on Plaintiff's initial Complaint, the Court

28  should dismiss Plaintiff's sole UCL claim (and this case) ***with prejudice***. *See Bird v.*

1   *Real Time Resolutions*, *Inc.*, 2017 WL 661375, at *10 (N.D. Cal. Feb. 17, 2017)

2   ("Because this action raises the same claims and arises from the same series of facts

3   as the Prior Lawsuit, the court construes this case as Plaintiff's second opportunity to

4   properly plead this action" and determines that "further amendment would be futile

5   because Plaintiff has failed to correct the deficiencies in her previous pleadings.").

6   **F.    The Court Should Strike Plaintiff's "Fail-Safe" Class Allegations**

7        Plaintiff now defines the putative class as consisting of "all non-GM vehicle

8   dealerships in California who have been harmed as a result of Defendants' unfair

9   business practice of refusing to allow third-party payoffs of their vehicles' purchase

10   options."  Compl. ¶ 64.  Plaintiff's substantively similar class definition remains

11   defective because it still defines an improper "fail-safe" class."

12        *First*, Plaintiff's class definition turns on merits questions, including whether

13   Defendants have engaged in "unfair business practice[s]" and "refuse[d] to allow

14   third-party payoffs[.]"  *See Lith v. Iheartmedia + Ent.*, *Inc.*, 2016 WL 4000356, at

15   *4–*5 (E.D. Cal. July 25, 2016) (holding "fail-safe" class exists "when the class itself

16   is defined in a way that precludes membership unless the liability of the defendant is

17   established" and striking definition) (internal citation omitted).

18        *Second*, Plaintiff's class definition includes only those independent dealerships

19   that purportedly "have been harmed."  By definition, "[t]his would result in a class

20   solely of people who prevail on the merits."  *Greene v. Select Funding*, *LLC*, 2021

21   WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (striking class allegations).

22        Courts regularly strike "defective class allegations before discovery" where the

23   "issues are plain enough from the pleadings[.]"  *Sanders v. Apple Inc.*, 672 F. Supp.

24   2d 978, 990 (N.D. Cal. 2009).  Here, Plaintiff's Complaint facially defines an

25   improper fail-safe class.  The Court should thus strike Plaintiff's class allegations.

26                        **V.    CONCLUSION**

27        GM LLC respectfully requests that the Court: (1) dismiss Plaintiff's Complaint

28   and sole UCL claim with prejudice, and (2) strike Plaintiff's class allegations.

1  DATED:  December 9, 2022          Respectfully submitted,

2

3

4                                        By */s/ Crystal Nix-Hines*
                                             Crystal Nix-Hines (Bar No. 326971)
5                                               crystalnixhines@quinnemanuel.com
                                             Kevin Y. Teruya (Bar No. 235916)
6                                               kevinteruya@quinnemanuel.com
                                             Claire Hausman (Bar No. 282091)
7                                               clairehausman@quinnemanuel.com
                                             Brantley I. Pepperman (Bar No. 322057)
8                                               brantleypepperman@quinnemanuel.com
9                                        **QUINN EMANUEL URQUHART &**
                                         **SULLIVAN, LLP**
10                                       865 South Figueroa Street, 10th Floor
                                         Los Angeles, California 90017-2543
11                                       Telephone:  (213) 443-3000
                                         Facsimile:  (213) 443-3100
12

13

14                                       *Attorneys for Defendant General Motors*
                                         *LLC*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By */s/ Crystal Nix-Hines*

Crystal Nix-Hines